## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

JAMES K. HENRY                                                    PLAINTIFF

V.                            No. 4:21-CV-206-BSM-JTR

JESTINY GIBSON;
and KRISTIE FLUD                                                DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.   Introduction

On March 15, 2021, Plaintiff James K. Henry ("Henry"), an Arkansas Department of Corrections ("ADC") prisoner being held at the Lonoke County Detention Facility ("LCDF"), initiated this action by filing a *pro se* Complaint alleging that he received constitutionally inadequate medical care after falling in the shower. *Doc. 2*. According to the allegations in his Complaint, Henry broke his left

hand on March 2, 2021 and two employees at LCDF, Jestiny Gibson ("Gibson") and Kristie Flud ("Flud"), failed to take actions to procure timely and adequate medical care for him. *Id.*

There are several matters pending before the Court: (1) Henry's June 11, 2021 Motion for Summary Judgment (*Doc. 21*); Henry's September 30, 2021 Motion for Summary Judgment (*Doc. 30*); Defendant Gibson and Defendant Flud's Motion for Summary Judgment (*Doc. 32*); and Henry's Motion for Temporary Injunction (*Doc. 27*). Before proceeding to the merits of any of those Motions, the Court will review the relevant procedural history.

On May 10, 2021, Henry filed a three-page Motion for Summary Judgment, supported by two health services request forms and a hospital visit summary. *Doc. 15*. Because discovery was stayed and Defendants had not yet had a chance to gather evidence to support their claims and defenses, the Court denied Henry's Motion for Summary Judgment as premature. *Doc. 16.*

On June 11, 2021, Henry refiled his Motion for Summary Judgment without alteration. *Doc. 21; Doc. 22*. Defendants Gibson and Flud filed a Response arguing: (1) the Motion was premature because the discovery period was ongoing; (2) Henry failed to follow local procedural rules by failing to file a Statement of Undisputed Facts; (3) failed to demonstrate an absence of a genuine issue of material fact; and (4) there was no evidence that either Gibson or Flud was deliberately indifferent to

Henry's serious medical needs. *Doc. 23*. Gibson and Flud also noted that they would be filing their own motion for summary judgment after the close of discovery. *Id.*

Because Henry's Motion for Summary Judgment was still premature, the Court entered an Order holding it in abeyance until the end of the discovery period. *Doc. 25*.

On September 13, 2021, Henry filed a Motion for Temporary Injunction alleging that he was being retaliated against by a Lonoke County parole officer, who was not originally named as a party to this § 1983 action. *Doc. 27*. Defendants filed a Response on September 20. *Doc. 28*.

On September 30, 2021, Henry submitted his Motion for Summary Judgment for a third time. *Doc. 30*. This Motion is exactly the same as Henry's May 10 and June 11 Motions (*Doc. 15; Doc. 21*), except this time he did not attach exhibits. Under Rule 56 of the Federal Rules of Civil Procedure, a party is not allowed to file redundant or cumulative motions for summary judgment. Because Henry is a *pro se* litigant, his second and third motions (*Doc. 21; Doc. 30*) are hereby considered with Henry's initial Motion for Summary Judgment (*Doc. 15*), *which is now deemed to be his only pending Motion for Summary Judgment*.

On October 15, 2021, shortly after the close of the discovery period, Defendants Gibson and Flud filed a Motion for Summary Judgment (*Doc. 32*); a Memorandum of Law in Support of their Motion for Summary Judgment (*Doc. 33*);

and a Statement of Undisputed Material Facts (*Doc. 34*). After receiving leave from the Court, Defendants filed their summary judgment exhibits under seal. *Doc. 35; Doc. 37*. Defendants' sealed exhibits include: (1) Affidavit of Defendant Gibson (Exhibit A); (2) ADC Health Services Requests (Exhibit 1A); (3) Affidavit of Nurse Practitioner Darrell Elkin (Exhibits B and 1B); (4) Henry's relevant hospital records (Exhibit 2); and (5) Henry's grievances and medical requests (Exhibit 3). *Doc. 37*.

On December 6, 2021, Henry filed "Objections to Defendants' Summary Judgment" (*Doc. 41*), which attached a large portion of the documents Defendants had filed under seal, and a Response to Defendants' Statement of Facts (*Doc. 42*). Defendants submitted a Reply on December 17. *Doc. 47*. Thus, all issues and motions are fully joined and ready for decision.

For the reasons set forth below, the Court recommends that: Defendants' Motion for Summary Judgment (*Doc. 32*) be GRANTED; Plaintiff's Motion for Summary Judgment (*Doc. 15*) be DENIED; and Plaintiff's Motion for Temporary Injunction (*Doc. 27*) be DENIED.

## II.  DISCUSSION

### A.    Defendants' Motion for Summary Judgment[1]

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine

Because Defendants' Motion for Summary Judgment has merit and fully sets out the facts underlying Henry's inadequate medical care claim, with supporting evidence, the Court will address it first.

*1.* Undisputed Material Facts

The undisputed material facts, viewed in the light most favorable to Henry,[2] are as follows:

1.     At all times relevant to his § 1983 claims, Henry was an ADC prisoner being held at LCDF.[3] *Doc. 34 at 1, ¶ 1; Doc. 42 at 1, ¶ 1.*

2.     Gibson is the Medical Administrator at LCDF and "manage[s] the medical requests from inmates, schedul[es] appointments, request[s], and work[s] with ADC to schedule or approved appointments" for ADC prisoners like Henry, who are being held at LCDF. *Doc. 34 at 2, ¶ 6; Doc. 42 at 3, ¶ 5.*

3.     Flud is the Jail Administrator at LCDF. *Doc. 34 at 3, ¶ 8; Doc. 41 at 54–61.*

---

dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

[2] "In deciding a motion for summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion…so long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotation marks, brackets, and ellipsis omitted).

[3] Henry's place of incarceration has changed several times during the pendency of this lawsuit. *See Doc. 5; Doc. 8; Doc. 50; Doc. 52.*

4.      On March 3, 2021, Henry slipped and fell in the shower. *Doc. 34 at 1, ¶ 3; Doc. 42 at 1, ¶ 1*. Later that day, at 3:16 p.m., Henry submitted a health services request which stated: "I slipped and fell coming out of the shower and fell on my left hand. It hurts and is swollen. I tr[ied] [to] tough it out by I think it might be broke or something." *Doc. 41 at 31*. At 4:17 p.m., he filed another medical request. *Doc. 41 at 81*.

5.      In order for an ADC prisoner like Henry, who is incarcerated at LCDF, to see an outside medical provider, LCDF must receive approval from the ADC. *Doc. 34 at 2, ¶ 6; Doc. 42 at 3, ¶ 5*.

6.      At 4:22 p.m. on March 3, Gibson faxed a medical request to the ADC which stated that Henry had hurt his left hand and thought it might be broke. *Doc. 41 at 39*.

7.      At 9:06 a.m. on March 4, Gibson informed Henry that she had sent a request to the ADC seeking outside medical care for his injured left hand, but had not yet received a response. At 11:05 a.m., Henry submitted a grievance to Defendant Flud stating that: (1) he was not receiving medical attention for his left hand, which he believed to be broken; and (2) he believed that the injury to his left hand was a medical emergency that did not have to be approved by the ADC. *Doc. 41 at 54*. In response, Flud said she would "speak with medical" and told Henry that there were "steps to take through ADC and they have to approve a Dr visit." *Id.* At

some point that day, the ADC gave approval for Henry to "see designated jail provider." *Doc. 41 at 39, 81.*

8.    On Friday March 5, an LCDF employee[4] examined Henry's hand and requested that he be transported to the emergency room. *Doc. 34 at 2, ¶5; Doc. 42 at 2, ¶ 4; Doc. 41 at 25, ¶ 2.* LCDF transported Henry to the emergency room that day, where he was diagnosed with "Fracture of fourth metacarpal bone of left hand; Hand injury – Minor." *Doc. 34 at 2, ¶ 5; Doc. 41 at 46.*

9.    Henry was discharged from the emergency room with a splint on his fractured finger and instructions to follow up with his primary care provider ("PCP") within one week. *Doc. 41 at 47.* He was also provided "Education Materials" which contained instructions to: (1) "Wear the splint as told by your doctor. Remove it only as told by your doctor;" and (2) "If told, put ice on your injured area…Leave the ice on for 20 minutes, 2–3 times a day." *Doc. 41 at 49–50.*

10.    The following morning, a Saturday, Henry requested his hospital records from Gibson. *Doc. 41 at 82.* At 9:26 p.m., Henry sent a grievance to Flud complaining that he was not receiving any ibuprofen or ice packs even though the

---

[4] The parties dispute whether this person was LCDF's medical provider, Darrell Elkin, or "Ms. Margie," who worked "in dispatch." *Doc. 42 at 2.* Because this factual dispute is not material, it need not be resolved by the Court. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.")

emergency room doctor told him to ice his hand and take ibuprofen or Tylenol. He also renewed his request for a copy of his hospital records. *Doc. 41 at 56*.

11.    On Sunday March 7, Henry sent another grievance to Flud complaining that he had not received his hospital records, even after several attempts. He also stated that he had a "1983 class action lawsuit" and was trying to get his *in forma pauperis* ("IFP") papers completed. *Doc. 41 at 58*.

12.    On Monday March 8, Gibson told Henry she would get his hospital papers to him. She also reminded Henry that, according to the papers, he needed to follow-up with his PCP and asked for the name of Henry's doctor. *Doc. 41 at 82*. Henry responded with another medical request to Gibson alleging that he was supposed to see a "hand specialist" not his PCP.[5] *Doc. 41 at 83*.

13.    Later on Monday March 8, Flud responded to Henry's grievances about not receiving ibuprofen, ice packs, IFP papers, or hospital documents. She told him that she would "see what was going on" and would let the jailers and medical provider know that he was supposed to receive ibuprofen and an ice pack. *Doc. 41 at 56, 58*.

---

[5] Other than Henry's unsworn statements, there is nothing in the record suggesting that Henry was directed to follow-up with a "hand specialist." A minor finger fracture would require a follow-up with a PCP, which was recommended by the emergency room doctor who splinted Henry's finger—not a "hand specialist."

14.     Thereafter, Henry did not receive ice packs, but he did receive ibuprofen at night. *Doc. 41 at 26, ¶ 4.*

15.     On Tuesday March 9, Gibson sent a health services request to the ADC seeking approval for Henry to be seen by his PCP or that he "get a fast track to [the] ADC." *Doc. 41 at 40*. That day, the ADC approved Henry to "be seen for follow-up." *Id.*

16.     On March 9, Henry also completed and signed his § 1983 Complaint, under penalty of perjury, alleging that: (1) he broke his hand on March 3, but had to wait until March 5 before getting the medical attention he requested; and (2) as of March 9, he had been suffering for four days in severe pain, without any additional medical treatment. *Doc. 2*. The Complaint was placed in the mail on March 11, and was received and filed by the Court on March 15. *Doc. 2 at 1, 7.*

17.     On March 10, Henry filed another grievance about not receiving medical treatment. Flud responded that Henry needed to let them know who his PCP was, so they could schedule an appointment. *Doc. 41 at 61*. Henry responded that he did not have a PCP and he was scheduled to see the LCDF medical provider on Monday, March 15. *Doc. 41 at 61, 63.*

18.     On March 15, LCDF's medical provider, Nurse Practitioner Darrell Elkin, noted that: (1) Henry's left hand was in a splint; (2) Henry was taking the splint on and off; and (3) he observed some minor discoloration. Henry was directed

to continue wearing the splint and to use ibuprofen and ice as need. *Doc. 41 at 40, Doc. 34 at 3–4, ¶ 9; Doc. 42 at 4, ¶ 8;* sealed Affidavit of Darrell Elkin (*Doc. 37*). After his visit with Nurse Elkin, Henry was provided ibuprofen and ice packs. *Doc. 34 at 4, ¶ 11; Doc. 42 at 5, ¶ 9.*

19.    Henry was transferred to ADC custody on April 1, 2021. *Doc. 34 at 4, ¶ 11; Doc. 42 at 5, ¶ 9.*

20.    In his sworn Affidavit, Nurse Practitioner Elkin opines that: "Henry received appropriate, timely and reasonable medical care at the [LCDF]…[and] was given access to doctors and medicine and emergency facilities when it was called for. He was not treated with deliberate indifference." *Doc. 37.*

2.  Henry's Deliberate Indifference Claims Against Gibson and Flud

Under the Eighth Amendment, Henry's inadequate medical care claims require him to prove that Gibson and Flud each were deliberately indifferent to his serious medical needs. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Thus, to prevail on these claims of deliberate indifference, Henry must prove that: (1) he had an objectively serious need for medical care for his left-hand injury; and (2) Gibson and Flud subjectively knew of, but deliberately disregarded, his serious medical needs. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Saylor*

*v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). A medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment" or if it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018).

Gibson and Flud do not dispute that Henry's left-hand injury was an objectively serious medical need or that they were both aware of the injury. However, they do argue that Henry's inadequate medical care claims fail because he cannot prove that they deliberately disregarded his serious medical need.

Deliberate indifference goes well beyond negligence or even gross negligence, and "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Liberally construing Henry's *pro se* Complaint, his summary judgment motion papers, and response to Defendants' Statement of Facts, his is alleging, *at most*, that Gibson and Flud were deliberately indifferent to his serious medical needs because they: (1) did not immediately recognize his March 3 left-hand injury as an emergency medical injury which required him to transported to the emergency room, instead they waited for approval from the ADC before transporting him to the emergency room on March 5; (2) failed to ensure that the ER doctor's orders were

received and followed by the LCDF guards, so Henry could receive ice and ibuprofen over the weekend of March 6–7; (3) failed to make sure he received ibuprofen and ice packs on March 8 and 9; and (4) they did not schedule him for a follow-up with a PCP by March 12, as directed by the ER doctor, but instead waited for approval from the ADC before scheduling and taking him for an appointment with Nurse Practitioner Elkin on March 15.

Viewing the undisputed facts, in the light most favorable to Henry, these allegations fall far short of demonstrating that Gibson or Flud acted with deliberate indifference in responding to the fracture of a metacarpal bone in his left hand. For example, as soon as Gibson became aware of Henry's injury, she took the required steps to ensure that, as an ADC prisoner, he received the necessary medical care for his injury. Similarly, as soon as Flud became aware that Henry was not receiving the recommended ice packs and ibuprofen, she took steps to ensure he would start receiving those items. Finally, as soon as Gibson reviewed Henry's medical records and saw he would need a follow-up with his PCP, she asked who his PCP was, and submitted a request for medical care to the ADC so that she could make that appointment.

Nothing about Gibson and Flud's actions was "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). Gibson and Flud both took immediate steps to

get Henry medical care. No reasonable jury could find that their actions amounted to "callousness" or that they were deliberately refusing to provide Henry with medical care. *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (Defendants did not act with deliberate indifference, and summary judgment was warranted, even though prisoner was not seen until nine days after his first complaint of finger pain and then there was an additional one-month delay before he received an x-ray that revealed a finger fracture).

To the extent that Henry is claiming the *short delays* in medical treatment constituted deliberate indifference to his serious medical need, the burden is on him to establish that the delays in treatment were detrimental to him. *Jackson v. Riebold*, 815 F.3d 1114, 1119–20 (8th Cir. 2016). The Eighth Circuit has held that a plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Jackson*, 815 F.3d at 1119–20. Where an inmate fails to offer such evidence, "[he] fail[s] to raise a genuine issue of fact on an essential element of his claim." *Id. at 1120.*

To prove "detrimental effect," Henry alleges that, as a result of the delay in medical care, he was: (1) "physically harmed when his hand healed improperly (knot in his left hand);" and (2) "psychologically harmed, as he now holds the belie[f] that no medical person[nel]…will provide proper medical treatment to an incarcerate[d] person such as his self." *Doc. 41 at 4–5*. These allegations are not sworn and cannot

13

be considered as "evidence" for purposes of summary judgment. But, even if they were, they fall far short of the "verifying medical evidence" necessary to establish that the short delays in him receiving medical care had any "detrimental effect" on him.

Finally, Defendants have produced the sworn declaration of Nurse Elkin who opines that the medical care provided was adequate. Henry has failed to rebut this testimony with the required *verified medical evidence* sufficient to overcome summary judgment.

Henry has presented no evidence that Defendants Gibson and Flud were deliberately indifferent to his left-hand injury. Accordingly, the Court should grant their Motion for Summary Judgment.

**B.    Henry's Motion for Summary Judgment and Motion for Temporary Injunction**

As previously explained the undisputed facts show that Gibson and Flud were *not* deliberately indifferent to Henry's serious medical needs. Accordingly, Henry's Motion for Summary Judgment on those claims is without merit. Similarly, based on the undisputed facts, Henry has offered no facts or evidence suggesting that he is likely to succeed on the merits, as need to prevail on his Motion for Temporary Injunction. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

Accordingly, Henry's pending Motion for Summary Judgment (*Doc. 15*) and his Motion for Temporary Injunction (*Doc. 27*) should be denied.

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT: Defendants' Motion for Summary Judgment (*Doc. 32*) be GRANTED; all of Henry's claims against Defendants, be DISMISSED, with prejudice; Henry's Motion for Summary Judgment (*Doc. 15*) and Motion for Temporary Injunction (*Doc. 27*) be DENIED; and this case, in its entirety, be dismissed and judgment be entered in favor of Defendants.

DATED this 22nd day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE